**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**<br>**Plaintiff,**<br><br>**AND**<br><br>**GLORIA STOKES,**<br>**Intervenor**<br><br>**vs.**<br><br>**EMCARE, INC.,**<br>**Defendant.** | **Civil Action No.  3:11-cv-02017-P** |

**AMENDED JOINT PRETRIAL ORDER**

Plaintiff, the Equal Employment Opportunity Commission (hereinafter "EEOC" or "Plaintiff"), Intervenor, Gloria Stokes (hereinafter "Intervenor" or "Stokes"), and the Defendant, EmCare Inc., (hereinafter "Defendant" or "EmCare") file this Amended Joint Pretrial Order in compliance with this Court's Order, filed November 15, 2012, and Local Rule 16.4:

I.  **SUMMARY OF CLAIMS AND DEFENSES**

A.  **PLAINTIFF'S AND INTERVENOR'S CONTENTIONS**

This is an employment discrimination case brought by the Plaintiff Equal Employment Opportunity Commission under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and Title I of the Civil Rights Act of 1991, on behalf of Intervenor Gloria Stokes, Yvonne Shaw, and Luke Trahan.  The EEOC alleges that Defendant violated Title VII by subjecting Intervenor to a hostile work environment based upon her sex, female, and terminating her employment in retaliation for her opposition to the hostile work environment.  The Commission further alleges that the Defendant violated Title VII by retaliating against aggrieved individuals

**JOINT PRETRIAL ORDER**                                                                                 1

Bonnie Shaw and Luke Trahan for their opposition to the hostile work environment.   More specifically, EEOC alleges that Stokes was subjected to sexual harassment by her supervisor, James McKinney, and other employees.   The harassment included comments about female body parts, reference to women in derogatory terms, and sexual jokes.   On several occasions, Ms. Stokes also heard members of the Human Resources Department remark that they did not want employees coming to them with complaints.   When Ms. Stokes opposed Mr. McKinney's sexually inappropriate conduct by advising him that he should watch his language and refusing to respond to Mr. McKinney's sexual remarks, Ms. Stokes was disciplined and ultimately fired.

With respect to Yvonne Shaw, EEOC alleges that she also witnessed Mr. McKinney's sexually inappropriate conduct.   Ms. Shaw complained about Mr. McKinney's sexual conduct to the Human Resources Department, and was fired in retaliation for that complaint shortly thereafter.   The HR Department never followed up on Ms. Shaw's complaint about Mr. McKinney.   Similarly, Luke Trahan heard Mr. McKinney make sexual remarks and was a witness to Mr. McKinney's sexually inappropriate conduct.   Mr. Trahan also complained about Mr. McKinney's sexually harassing behavior to the Human Resources Department and was fired in retaliation for that complaint shortly thereafter.

The EEOC seeks an award of back pay and lost benefits to recover lost wages for Stokes, Shaw, and Trahan, along with compensatory damages for the emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life that Stokes, Shaw, and Trahan experienced as a result of Defendant's unlawful actions.   The EEOC also seeks an award of punitive damages against the Defendant for acting with malice or reckless indifference to the federally-protected rights of Stokes, Shaw, and Trahan. Finally, the EEOC seeks non-monetary injunctive relief including but not limited to, training and the posting of a notice regarding the

**JOINT PRETRIAL ORDER**                                                                                           2

company's policy on sexual harassment and retaliation. EEOC and the Intervenor also seek front pay for Stokes, Shaw and Trahan, costs and attorney's fees for Ms. Stokes.

### B.  DEFENDANT'S CONTENTIONS

EmCare denies that Stokes was ever subjected to a sexually hostile work environment. EmCare denies that Stokes was subjected to sexually explicit comments by her supervisor, Jim McKinney, or other EmCare employees.  EmCare denies that Stokes reported any alleged harassment or discrimination to EmCare's management, EmCare's human resources department, or EmCare's compliance department until after it became obvious to Stokes that she was about to be terminated for cause.  EmCare contends that Stokes was not sufficiently qualified for the position she occupied at EmCare and her job performance was severely lacking.  As a result, after verbal counseling had failed to remedy the performance deficits, Stokes received a written performance improvement plan on April 1, 2009, documenting the areas in which the company required her to improve her performance to avoid termination.  EmCare states that Stokes failed to adequately comply with the performance improvement plan and that such resulted in her termination after conclusion of the probationary period specified in the performance improvement plan.  EmCare further states that as of the date of termination Stokes had not communicated her alleged workplace improprieties to human resources or management, and that her supervisors including Mr. McKinney were unaware of any complaints about alleged harassment or inappropriate behavior or comments.  EmCare denies that Stokes was terminated, or had any other adverse employment action taken against her, in retaliation for complaining about a sexually hostile work environment; and that her complaints made in this case originated during a two-week period provided her to get her affairs in order following termination.

**JOINT PRETRIAL ORDER**                                                                 3

EmCare further denies that it retaliated against Trahan or Shaw, but instead contends both were terminated for cause.  EmCare denies that Shaw or Trahan witnessed any actionable conduct by McKinney and further denies that either made any report regarding same to EmCare's human resources department or otherwise engaged in protected activities.  EmCare further denies that Trahan's and Shaw's supervisor, Sean Richardson, who was solely responsible for the decision to terminate these individuals' employment with EmCare, had any knowledge of any report that either Shaw or Trahan allegedly made regarding a sexually hostile environment.  Rather, Mr. Richardson had previously expressed concerns with the quality of both Shaw's and Trahan's work.  Mr. Richardson had Shaw's and Trahan's work independently audited by other experienced employees to ascertain whether his concerns were well founded, and was subsequently advised that the audits concluded that both were significantly deficient in their performance.  For this reason alone Mr. Richardson elected to terminate Shaw's and Trahan's employment.

EmCare denies that Stokes, Shaw or Trahan are entitled to any compensation, whether it be in the form of back pay, front pay, compensatory damages, or punitive damages.  EmCare denies that it acted with malice or reckless indifference for the federally protected employment rights of Stokes, Shaw or Trahan.  EmCare further denies that the EEOC is entitled to any injunctive relief or other enforcement order. EmCare also denies that Stokes is entitled to attorney's fees or costs.  EmCare states that it has a zero tolerance for sexual harassment and inappropriate behavior, and its mechanism for investigation and resolution of any such complaints meets or exceeds any reasonable industry standards.

## II.  STATEMENT OF STIPULATED FACTS

1.      All prerequisites to the filing of suit have been met.

**JOINT PRETRIAL ORDER**                                                                 4

2.      The Court has jurisdiction over this case and the parties.

3.      Defendant has employed more than 500 employees in each of the 20 or more calendar weeks in the current or preceding calendar year.

4.      At all relevant times, the Defendant has been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

5.      Gloria ("Mikki") Stokes was accepted employment as the Executive Assistant to Jim McKinney on November 14, 2008.  Her first day of work at EmCare was December 1, 2008.

6.      On April 25, 2009, Stokes was notified that her employment was being terminated effective May 8, 2009.

7.      After her termination from EmCare, Stokes did temporary work for approximately 90 days,

8.      Stokes then worked for Child Care Associates as an Executive Assistant from September 2009 to December 2010. From May 16, 2011 to June 29, 2012, Stokes was employed through Office Team, a temporary company, doing Administrative Assistant work for Ares Management.

9.      From May 14, 2012 through June 29, 2012, Stokes was again employed through Office Team doing Administrative Assistant work for Ares Management.

10.     Yvonne ("Bonnie") Shaw was employed by EmCare from April 8, 2009 until August 20, 2009. Her supervisor was Sean Richardson.

**JOINT PRETRIAL ORDER**                                                      5

11.    After being terminated by EmCare, Shaw went to work at MedStar from approximately September 2009 until approximately March 2010. Shaw earned $10,600 from MedStar in 2009. Shaw earned $4,218.33 from MedStar in 2010.

12.    Shaw worked at Neuterra Healthcare Management LLC from March 28, 2010 until July 2010. Shaw earned $7,832.15 from Neuterra in 2010.

13.    Shaw worked at McKesson Corporation (PST Services) from August 2010 until June 2011. Shaw earned $5,567.16 from McKesson in 2010. Shaw earned $13,807.71 from McKesson in 2011.

14.    Shaw worked at Methodist from July 2011 until December 2011. Shaw earned $15,469.03 from Methodist in 2011.

15.    Shaw was unemployed from January 2012-February 2012.

16.    Shaw worked at QMACS Inc. in March 2012. She earned $113.06 from QMACS Inc. in 2012.

17.    Shaw worked at Physiotherapy Corporation in April 2012. She earned $2,175.75 from Physiotherapy Corporation in 2012.

18.    Shaw worked at Miraca Life Sciences Inc. in May 2012. She earned $3,088.14 from Miraca Life Sciences in 2012.

19.    Shaw was unemployed from June 2012 until July 2012.

20.    Shaw was hired by Baylor Healthcare Systems in July 2012. She remains in that position. Shaw earned $17,000.87 from Baylor in 2012. Shaw earned $57,793.33 from Baylor in 2013. Shaw earned $17,414.63 from Baylor from January through April of 2014.

21.     Luke Trahan was employed by EmCare from November 2008 through August 20, 2009.

22.     After being terminated by EmCare, Trahan began working for StaffCare in September 2009.

## III.     CONTESTED ISSUES OF FACT

### PLAINTIFF'S

1.      Whether EEOC and Intervenor proved by a preponderance of the evidence that Defendant subjected Stokes to a sexually hostile work environment.

### DEFENDANT'S

1.      Whether EEOC and Intervenor proved by a preponderance of the evidence that Stokes was subjected to unwelcome sexual harassment by her supervisor and that the conduct to which Stokes contends she was subjected was both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that Stokes perceived it to be so;

### JOINT CONTESTED ISSUES OF FACT

2.      If Plaintiff and Intervenor meet their burden as to the preceding, whether EmCare proved by a preponderance of the evidence that (a) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) Stokes unreasonably failed to take advantage of any preventive or corrective opportunities provided by EmCare or to avoid harm otherwise.

3.      Whether EEOC and Intervenor proved by a preponderance of the evidence that Defendant subjected Stokes to retaliation by terminating her employment because she opposed and/or complained of sexual harassment;

4.    Whether EEOC proved by a preponderance of the evidence that Defendant subjected Shaw to retaliation by terminating her employment because she opposed and/or complained of sexual harassment;

5.    Whether EEOC proved by a preponderance of the evidence that Defendant subjected Trahan to retaliation by terminating his employment because he opposed and/or complained of sexual harassment;

6.    Whether Stokes is entitled to back pay and lost benefits, and if so, what amount of back pay damages is she entitled to receive;

7.    Whether Shaw is entitled to back pay and lost benefits, and if so, what amount of back pay damages is she entitled to receive;

8.    Whether Trahan is entitled to back pay and lost benefits, and if so, what amount of back pay damages is he entitled to receive;

9.    Whether Stokes is entitled to an award of compensatory damages and, if so, what amount of compensatory damages is she entitled to receive;

10.   Whether Shaw is entitled to an award of compensatory damages and, if so, what amount of compensatory damages is she entitled to receive;

11.   Whether Trahan is entitled to an award of compensatory damages and, if so, what amount of compensatory damages is he entitled to receive;

12.   Whether the Defendant acted with malice or with reckless indifference to the federally protected rights of Stokes, Shaw and Trahan;

13.   What amount of punitive damages, if any, should be assessed against the Defendant for its conduct toward Stokes;

14.     What amount of punitive damages, if any, should be assessed against the Defendant for its conduct toward Shaw;

15.     What amount of punitive damages, if any, should be assessed against the Defendant for its conduct toward Trahan.

## IV.     CONTESTED ISSUES OF LAW

### DEFENDANT'S

1.     Whether the harassment to which Stokes contends she was subjected was sufficiently severe or pervasive so as to alter the conditions of her employment;

2.     Whether Plaintiff or Intervenor can show the required causal link between the alleged protected activity and the alleged adverse action.

### JOINT

In the event that the jury returns a finding of discrimination against the Defendant, EEOC expects to file post-trial motions, asking the Court to rule on the following issues of law:

1.     Whether the EEOC is entitled to injunctive relief against the Defendant to prevent further employment discrimination;

2.     What amount of prejudgment interest should be taxed on the damages awarded to Stokes, Shaw and Trahan;

3.     Whether Stokes, Shaw and Trahan are entitled to front pay, and if so, what amount of front pay are they entitled to receive;

4.     Whether EEOC is entitled to costs and if so, what amount?

5.     Whether Stokes is entitled to attorney's fees and costs, and if so, what amount?

## V.     ESTIMATED LENGTH OF TRIAL

The parties estimate that it will take five to seven days to complete the trial of this case.

**JOINT PRETRIAL ORDER**                                                                                         9

## VI.    ADDITIONAL MATTERS THAT MIGHT AID DISPOSITION OF CASE

The parties request that the Court consider the Intervenor's motion to bifurcate the issue of attorney's costs and fees for Ms. Stokes. This bifurcation would aid in the efficiency of the conduct of trial.

SIGNED this _____ day of _____, 2014.

_____
HON. U.S. DISTRICT JUDGE JORGE A. SOLIS

**JOINT PRETRIAL ORDER**                                                                    10

AGREED TO AS TO FORM AND CONTENT:


FOR THE PLAINTIFF:

ROBERT A. CANINO
Regional Attorney
Oklahoma State Bar No. 011782

SUZANNE M. ANDERSON
Supervisory Trial Attorney
Texas State Bar No. 14009470


/s/ Meaghan L. Shepard
MEAGHAN L. SHEPARD
Senior Trial Attorney

FOR THE INTERVENOR GLORIA STOKES
/s/ Laura Hallmon
Laura Hallmon
Texas State Bar No. 24004312

FIELDING, PARKER & HALLMON, LLP
6001 Bridge Street
Suite 102
Ft Worth, TX  76112
817.446-8080
817.446-8084 (Fax)

FOR THE DEFENDANT:

Russell W. Schell
Texas State Bar No. 17736800

/s/Jennifer G. Martin
Jennifer G. Martin
Texas State Bar No. 00794233

**SCHELL COOLEY LLP**
15455 Dallas Parkway
Suite 550
Addison, TX 75001
214.665.2000
214.745.0060 (Fax)

**JOINT PRETRIAL ORDER**                                                    11