IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT 21 2014

CLERK, U.S. DISTRICT COURT
By _____
Deputy

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

AND

GLORIA STOKES,
Intervenor

vs.

EMCARE, INC.,
Defendant.

Civil Action No.  3:11-cv-02017-P

## COURT'S CHARGE TO THE JURY

**MEMBERS OF THE JURY:**

Now that you have heard all of the evidence, it becomes my duty to give you the instructions of the Court concerning the law applicable to this case.

It is your duty as jurors to follow the law as I shall state it to you, and to apply that law to the facts as you find them from the evidence in the case.  You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.  Neither are you to be concerned with the wisdom of any rule stated by me.

Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than that given in the instructions of the Court, just as it would also be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything other than the evidence in the case.

In deciding the facts of this case, you must not be swayed by bias or prejudice or favor as to any party. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice. Our system of law does not permit jurors to be governed by prejudice or sympathy or public opinion. Both the parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the Court in these instructions, and reach a just verdict regardless of the consequences.

This case should be considered and decided by you as an action between persons of equal standing in the community, and holding the same or similar stations in life. A corporation is entitled to the same fair trial at your hands as is a private individual. The law is no respecter of persons, and all persons, including corporations, stand equal before the law and are to be dealt with as equals in a court of justice.

When a corporate entity is involved, of course, it may act only through natural persons as its agents or employees; and, in general, any agent or employee acting in a supervising or managerial capacity of a corporate entity may bind that entity by his or her acts and declarations made while acting within the scope of his or her duties as an employee of that corporate entity.

As stated earlier, it is your duty to determine the facts, and in so doing you must consider only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony of the witnesses, the exhibits admitted in the record, and stipulated facts. Stipulated facts must be accepted as proven facts. Any evidence as to which an objection was sustained by the Court and any evidence ordered stricken by the Court, must be entirely disregarded.

Remember that any statements, objections or arguments made by the lawyers are not evidence in the case. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing, to call your attention to certain

facts or inferences that might otherwise escape your notice. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you.

Generally speaking, there are two types of evidence which a jury may consider in properly finding the truth as to the facts in this case. One is "direct" evidence—such as testimony of an eyewitness. The other is "indirect" or "circumstantial" evidence—the proof of a chain of circumstances which points to the existence or nonexistence of certain facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts from a preponderance of all the evidence, both direct and circumstantial.

So, while you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.

Now, I have said that you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate. You are the sole judges of the credibility or "believability" of each witness and the weight to be given to his or her testimony. In weighing the testimony of a witness, you should consider his or her relationship to Plaintiff or to Defendants; his or her interest, if any, in the outcome of the case; his or her manner of testifying; his or her opportunity to observe or acquire knowledge concerning the facts about which he or she testified; his or her candor, fairness and intelligence; and the extent to which he or she has been supported or contradicted by other credible evidence. You may, in short, accept or reject the testimony of any witness in whole or in part.

Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or nonexistence of any fact. You may find that the testimony of a smaller number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

During the trial of this case, certain testimony has been read to you by way of depositions, consisting of sworn answers to questions asked of the witnesses in advance of trial. Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by the jury in the same way, insofar as possible, as if the witness had been present and had given from the witness stand the same testimony as given in the deposition.

I will instruct you as to which party has the burden of proof on each essential element of its claim in the case. The party having the burden of proof on each issue of fact must prove that fact by a "preponderance of the evidence." Unless otherwise instructed, you must answer all questions from a preponderance of the evidence. A preponderance of the evidence means such evidence as, when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not true. In other words, to establish a claim by a preponderance of the evidence merely means to prove that the claim is more likely so than not so.

In determining whether any fact in issue has been proved by a preponderance of the evidence, you the jury may consider the testimony of all the witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have introduced them. If the proof should fail to establish any essential element of the Equal Employment Opportunity Commission's (EEOC) and Gloria Stokes' claims by a preponderance of the evidence, the jury

should find for EmCare.  Defendant must also prove every essential part of its affirmative defenses by a preponderance of the evidence.

A witness may be "impeached" or discredited by contradictory evidence, by a showing that he or she testified falsely concerning a material matter, or by evidence that at some other time he or she said or did something, or failed to say or do something, which is inconsistent with the witness' present testimony.  If you believe that any witness has been so impeached, it is in your exclusive province to give the testimony of that witness such credibility or weight, if any, as you think it deserves.

In answering the questions which I will submit to you, answer "yes" or "no" unless otherwise instructed.  A "yes" answer must be based on a preponderance of the evidence.  If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no."

After I have completed reading these instructions and reviewing the verdict form and jury questions with you, counsel will have the opportunity to make their closing arguments.

Your verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that all members of the jury agree to it.  You therefore may not enter into an agreement to be bound by a majority or any vote other than a unanimous one.

Remember at all times that you are not partisans.  Rather, you are judges—judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

Upon retiring to the jury room, you should first select one juror to act as your presiding officer who will preside over your deliberations and will be your spokesperson here in Court.  A verdict form has been prepared for your convenience.  Your presiding officer will sign in the space provided below after you have reached your verdict.

If, during your deliberations, you wish to communicate with the Court, you should do so only in writing by a note handed to the Deputy Marshal and signed by the presiding officer. During your deliberations, you will set your own work schedule, deciding for yourselves when and how frequently you wish to recess and for how long.

After you have reached your verdict, you will return these instructions together with your written answers to the questions that I will submit to you. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.

Date: October _21_ , 2014.

Jorge A. Solis

JORGE A. SOLIS

UNITED STATES DISTRICT JUDGE

## STIPULATIONS OF FACT

Before the trial of the case the parties entered into certain stipulations or agreements, in which they agreed that facts could be taken as true without further proof. You must treat these facts as having been proved. The Court then issued a Pretrial Order incorporating these stipulations. The parties have stipulated, or agreed that the following are facts:

1.  All prerequisites to the filing of suit have been met.

2.  The Court has jurisdiction over this case and the parties.

3.  Defendant has employed more than 500 employees in each of the 20 or more calendar weeks in the current or preceding calendar year.

4.  At all relevant times, the Defendant has been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

5.  Gloria ("Mikki") Stokes accepted employment as the Executive Assistant to Jim McKinney on November 14, 2008.  Her first day of work at EmCare was December 1, 2008.

6.  On April 27, 2009, Stokes was notified that her employment was being terminated effective May 8, 2009.

7.  After her termination from EmCare, Stokes was employed by Lakeshore Temporary Company from June 11, 2009 to August 9, 2009.  Stokes earned $6,416 from Lakeshore in 2009.

8.  Stokes then worked for Child Care Associates (CCA) as an Executive Assistant from September 24, 2009 to December 7, 2010.   Stokes earned $10,596.68 from CCA in 2009.   Stokes earned $44,593.48 from CCA in 2010.

9.  Yvonne ("Bonnie") Shaw was employed by EmCare from April 8, 2009 until August 20, 2009. Her supervisor was Sean Richardson.

10.  After being terminated by EmCare, Shaw went to work at MedStar from approximately September 2009 until approximately March 2010. Shaw earned $10,600 from MedStar in 2009. Shaw earned $4,218.33 from MedStar in 2010.

11.  Shaw worked at Neuterra Healthcare Management LLC from March 28, 2010 until July 2010. Shaw earned $7,832.15 from Neuterra in 2010.

12.  Shaw worked at McKesson Corporation (PST Services) from August 2010 until June 2011. Shaw earned $5,567.16 from McKesson in 2010. Shaw earned $13,807.71 from McKesson in 2011.

13.  Shaw worked at Methodist from July 2011 until December 2011. Shaw earned $15,469.03 from Methodist in 2011.

14.  Shaw was unemployed from January 2012-February 2012.

15.  Shaw worked at QMACS Inc. in March 2012. She earned $113.06 from QMACS Inc. in 2012.

16.  Shaw worked at Physiotherapy Corporation in April 2012. She earned $2,175.75 from Physiotherapy Corporation in 2012.

17.  Shaw worked at Miraca Life Sciences Inc. in May 2012. She earned $3,088.14 from Miraca Life Sciences in 2012.

18.  Shaw was unemployed from June 2012 until July 2012.

19.  Shaw was hired by Baylor Healthcare Systems in July 2012. She remains in that position. Shaw earned $17,000.87 from Baylor in 2012. Shaw earned $57,793.33 from Baylor in 2013. Shaw earned $17,414.63 from Baylor from January through April of 2014.

20.  Luke Trahan was employed by EmCare from November 2008 through August 20, 2009.

21.  After being terminated by EmCare, Trahan began working for StaffCare in September 2009.

## THE EEOC'S ROLE IN ENFORCING TITLE VII

The Equal Employment Opportunity Commission ("EEOC") is the Plaintiff in this case. EEOC is the federal agency responsible for enforcing federal laws prohibiting employment discrimination, including Title VII of the Civil Rights Act of 1964 ("Title VII"). Title VII prohibits, among others, discrimination based on sex including sexual harassment. Title VII also prohibits retaliation against a person because they opposed discrimination or made a complaint about discrimination in the workplace. Nevertheless, employers are entitled to make employment decisions for any reason they find appropriate, provided that the reason is not unlawful.

A person who believes an employer has discriminated against her may file a charge of discrimination with the EEOC. After EEOC investigates the discrimination charge, it may file a lawsuit against an employer to end the discrimination and obtain monetary relief for persons harmed by the discrimination.

The fact that the EEOC is the plaintiff in this case should not influence your verdict. You should answer the questions submitted to you on the basis of all the evidence presented in court and on the instructions on the law given by the Court in this charge.

## SEXUALLY HOSTILE WORK ENVIRONMENT BY NON-SUPERVISORS

Plaintiff EEOC and Intervenor Stokes allege that, during Ms. Stokes' employment with the Defendant, she was subjected to a sexually hostile work environment by a non-supervisory co-worker. To succeed on this claim, EEOC must prove the following by a preponderance of the evidence:

1. Ms. Stokes was subjected to unwelcome harassment, including but not limited to comments, based on her sex.

2. The harassment was sufficiently severe or pervasive to alter the terms or conditions of Ms. Stokes' employment;

3. Ms. Stokes believed that the harassment made her work environment offensive;

4. The Defendant knew or should have known about the sexual harassment; and

5. The Defendant failed to exercise reasonable care to prevent and correct the sexual harassment.

In determining whether a hostile work environment existed, you must consider the evidence from both Ms. Stokes' perspective and from the perspective of a reasonable person. First, Ms. Stokes must actually find the conduct offensive. Next, you must look at the evidence from the perspective of a reasonable person's reaction to a similar environment under similar circumstances. You cannot view the evidence from the perspective of an overly sensitive person, nor can you view the evidence from the perspective of someone who is never offended. Rather, the alleged harassing behavior must be such that a reasonable person in the same or similar circumstances as Ms. Stokes would find the conduct offensive.

To decide whether a reasonable person would find Ms. Stokes' work environment offensive, you must look at the totality of the circumstances. Factors to consider may include the frequency of the conduct, its severity, its duration, whether the behavior was physically threatening or humiliating, and whether it unreasonably interfered with Ms. Stokes' work performance. You should not separate the harassment into individual or isolated events. No single factor is required to conclude that a work environment offensive. There is no specific number of harassing acts or comments that must be committed before you may reasonably find that a hostile environment exists. Moreover, comments do not need to be directed toward Gloria Stokes herself in order to establish a hostile work environment.

Although sexual harassment must be based on sex, it need not be motivated by sexual desire. Sexual harassment may include extremely insensitive conduct because of sex. Simple teasing, offhand comments, sporadic use of offensive language, occasional sex-related jokes, and isolated incidents (unless they are serious) will generally not amount to discriminatory changes in work environment.

In order to show that the Defendant knew or should have known about the harassment, EEOC and Intervenor must prove that: (a) the harassment was known or communicated to a person who had the authority to receive, address, or report the complaint; **or** (b) the harassment was so open and obvious that the Defendant should have known of it.

If you find that the EEOC and Intervenor have proven the elements above, you must find that Ms. Stokes was subjected to a sexually hostile work environment.

## QUESTION NO. 1

Do you find by a preponderance of the evidence that **Gloria Stokes** was sexually harassed by a non-supervisory co-worker?

Yes  _____   No  _____

*If you answered Yes to Question 1, proceed to Question 2.*
*If you answered No to Question 1, proceed to Question 3.*

## QUESTION NO. 2

A.   Do you find by a preponderance of the evidence that the Defendant knew or should have known about the sexual harassment?

Yes _____   No _____

*If you answered Yes, proceed to Question 2 B.*
*If you answered No, proceed to Question 3.*

B.   Do you find by a preponderance of the evidence that the Defendant failed to exercise reasonable care to prevent and correct the sexual harassment.

Yes _____   No _____

*Proceed to Question 3.*

## SEXUALLY HOSTILE WORK ENVIRONMENT BY SUPERVISORS

Plaintiff EEOC and Intervenor Stokes claim that some of the sexual harassment to which Ms. Stokes was subjected came from EmCare supervisors.  To decide if any of these individuals was a supervisor, you must determine whether he had the authority to take tangible employment actions against Ms. Stokes, even if such action was not actually taken.  Tangible employment actions include, but are not limited to, hiring, firing, demotion, transfer, and/or discipline.

If you find that any of these persons was a supervisor at the time of the harassment, the EEOC and Intervenor need to prove by a preponderance of evidence that:

1.   Ms. Stokes was subjected to unwelcome harassment, including but not limited to, comments based on her sex;

2. The harassment was sufficiently severe or pervasive to alter the terms or conditions Stokes' employment; and

3. Ms. Stokes believed that the harassment made her work environment offensive.

In determining whether a hostile work environment existed, you must consider the evidence from both Ms. Stokes' perspective and from the perspective of a reasonable person. First, Ms. Stokes must actually find the conduct offensive. Next, you must look at the evidence from the perspective of a reasonable person's reaction to a similar environment under similar circumstances. You cannot view the evidence from the perspective of an overly sensitive person, nor can you view the evidence from the perspective of someone who is never offended. Rather, the alleged harassing behavior must be such that a reasonable person in the same or similar circumstances as Ms. Stokes would find the conduct offensive.

To decide whether a reasonable person would find Ms. Stokes' work environment offensive, you must look at the totality of the circumstances. Factors to consider may include the frequency of the conduct, its severity, its duration, whether the behavior was physically threatening or humiliating, and whether it unreasonably interfered with Ms. Stokes' work performance. You should not separate the harassment into individual or isolated events. No single factor is required to conclude that a work environment was offensive. There is no specific number of harassing acts or comments that must be committed before you may reasonably find that a hostile environment exists. Moreover, comments do not need to be directed toward Gloria Stokes herself in order to establish a hostile work environment.

## QUESTION NO. 3

Do you find by a preponderance of the evidence that **Gloria Stokes** was sexually harassed by a supervisor?

Yes  _____  No  _____

*If you answered Yes, proceed to Question 4.*
*If you answered No, proceed to Question 5.*

## QUESTION NO. 4

Even if you find that Plaintiff Stokes was sexually harassed, her claim fails if Defendant EmCare proves by a preponderance of evidence that: (a) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by Defendant EmCare, or failed to avoid harm otherwise. If Defendant EmCare proves (a) **and** (b), you must find for Defendant EmCare.

A. Do you find by a preponderance of the evidence that the Defendant exercised reasonable care to prevent and promptly correct any sexually harassing behavior?

Yes  _____  No  _____

*If you answered Yes to Question 4  A, proceed to Question 4 B.  Otherwise, proceed to the Retaliation instruction and Question 5.*

B. Do you find by a preponderance of the evidence that **Gloria Stokes** unreasonably failed to take advantage of any preventative or corrective opportunities provided by Defendant, or to avoid harm otherwise?

Yes _____ No _____

*Proceed to the Retaliation instruction and Question 5.*


## RETALIATION

Plaintiff EEOC and Intervenor Stokes allege that Ms. Stokes' employment with the Defendant was terminated because she opposed, or complained about, the sexually hostile work environment to which she was exposed. Plaintiff EEOC further alleges that Ms. Bonnie Shaw and Mr. Luke Trahan were also fired for their opposition to, or complaints about, a sexually hostile work environment at EmCare.

Defendant EmCare denies Plaintiff's and Intervenor's claims and contends that Ms Stokes, Ms. Shaw and Mr. Trahan were all terminated because of unsatisfactory job performance.

To succeed in their claims of unlawful retaliation, Plaintiff and Intervenor must prove by a preponderance of the evidence that but for Ms. Stokes, Ms. Shaw, and Mr. Trahan engaging in protected activity, the Defendant would not have terminated them. When making a retaliation claim for opposing an employment practice, or for making a complaint about an employment practice, Plaintiff and Intervenor must prove that Ms. Stokes, Ms. Shaw and Mr. Trahan had at least a reasonable belief that the practice was unlawful under Title VII.

Protected activity includes opposing an employment practice that is unlawful under Title VII, making a charge of discrimination, or testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII.

## QUESTION NO. 5

Do you find by a preponderance of the evidence that the Defendant terminated **Gloria Stokes** in retaliation because she complained about or opposed sexual harassment or discrimination in the workplace?

Yes _____   No _____

*Proceed to Question 6.*

## QUESTION NO. 6

Do you find by a preponderance of the evidence that the Defendant terminated **Bonnie Shaw** in retaliation because she complained about or opposed sexual harassment or discrimination in the workplace?

Yes _____   No _____

*Proceed to Question 7.*

## QUESTION NO. 7

Do you find by a preponderance of the evidence that the Defendant terminated **Luke Trahan** in retaliation because he complained about or opposed sexual harassment or discrimination in the workplace?

Yes _____   No _____

*Proceed to the Damages instruction and Question 8 if you answered Yes to both parts of Question 2, and/or you answered No to either part of Question 4, and/or you answered Yes to Question 5.*
*Otherwise proceed to the Damages instruction and Question 9 if you answered Yes to Question 6 or proceed to Question 10 if you answered Yes to Question 7.   If you answered No to Questions 6 and 7, proceed to the Certificate page.*

## DAMAGES

If you find that Plaintiff and Intervenor have proved any of their claims against Defendant EmCare, you must determine damages to be awarded to Ms. Gloria Stokes, Ms. Bonnie Shaw, and Mr. Luke Trahan.   Plaintiff and Intervenor have the burden of proving those damages by a preponderance.

You should not interpret the fact that I have given instructions about damages as an indication in any way that I believe that they should, or should not, win this case.   It is your task first to decide whether Defendant EmCare is liable.   I am instructing you on damages only so that you will have guidance in the event you decide that Defendant EmCare is liable and that Ms. Stokes, Ms. Shaw, and Mr. Trahan are entitled to recover money from Defendant EmCare.

If you decide to award damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.   You should not award damages for speculative injuries, but only for those injuries which Plaintiff and Intervenor have actually suffered.   On the other hand, the law does not require that Plaintiff and Intervenor prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You should consider the following elements of damages, and no others: (1) back pay; and (2) non-pecuniary compensatory damages, which include emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

## Back Pay

Back pay and benefits include the amounts the evidence shows that Ms. Stokes would have earned had she remained employed through December 7, 2010, and that Ms. Shaw, and/or Mr. Trahan would have earned had they remained employees from the date of their termination through the day of trial. Back pay and benefits include fringe benefits such as life and health insurance, minus the amounts of earnings and benefits, if any, Defendant EmCare proves by a preponderance of the evidence that Ms. Stokes, Ms. Shaw, and Mr. Trahan received in the interim. In calculating back pay, you may make an estimate of the amount of money that will constitute just and reasonable compensation based on the facts that are before you.

## Compensatory Damages

The purpose of compensatory damages is to make these individuals whole—that is, to compensate them for mental or emotional distress which they have suffered as a consequence of Defendant's illegal conduct. The EEOC and Intervenor assert that as a result of Defendant's unlawful treatment of Gloria Stokes, Bonnie Shaw, and Luke Trahan, they have suffered from inconvenience, mental anguish, and loss of enjoyment of life. Mental or emotional distress may manifest itself, for example, as sleeplessness, anxiety, stress, high blood pressure, depression, anger, humiliation, distress, loss of self-esteem, or excessive fatigue. Corroborating medical evidence testimony at trial is not necessary to prove a claim for emotional harm, although you can take into account medical documents and testimonial evidence where provided.

If you find that the EEOC and Intervenor have proven by a preponderance of the evidence that Gloria Stokes, Bonnie Shaw and/or Luke Trahan have suffered from mental or emotional distress, then you must determine an amount that is fair compensation for each one of their damages. No evidence of the monetary value needs to be introduced into evidence. However, the

damages that you award must be fair compensation no more and no less. Do not include as compensatory damages back pay or interest on back pay and/or benefits.

Only answer question

*Only answer Question 8 if you answered Yes to both parts of Question 2, and/or you answered No to either part of Question 4, and/or you answered Yes to Question 5.*

## QUESTION NO. 8

A. To what amount, up until December 7, 2010, is **Gloria Stokes** entitled for back pay and benefits because the Defendant terminated her?

$_____

B. Do you find by a preponderance of the evidence that **Gloria Stokes** should be awarded compensatory damages to compensate her for emotional pain, suffering, mental anguish and loss of enjoyment of life caused by the Defendant's conduct?

Yes _____   No _____

If your answer is Yes, in what amount? _____

*Proceed to Question 9 only if you answered Yes to Question 6.  Otherwise proceed to Question 10.*

## QUESTION NO. 9

A. To what amount is **Bonnie Shaw** entitled for back pay and benefits because the Defendant terminated her?

$_____

B. Do you find by a preponderance of the evidence that **Bonnie Shaw** should be awarded compensatory damages to compensate her for emotional pain, suffering, mental anguish and loss of enjoyment of life caused by the Defendant's conduct?

Yes_____ No _____

If your answer is Yes, in what amount? _____

*Proceed to Question 10 only if you answered Yes to Question 7.  Otherwise proceed to the Punitive Damages instruction.*

## QUESTION NO. 10

A. To what amount is **Luke Trahan** entitled to for back pay and benefits because the Defendant terminated him?

$_____

B. Do you find by a preponderance of the evidence that **Luke Trahan** should be awarded compensatory damages to compensate him for emotional pain, suffering, mental anguish and loss of enjoyment of life caused by the Defendant's conduct?

Yes        _____ No _____

If your answer is Yes, in what amount? _____

*Proceed to the Punitive Damages instruction only if you:*

  i.   *Answered No to either part of Question 4; and/or*
 ii.   *Answered Yes to Question 5; and/or*
iii.   *Answered Yes to Question 6; and/or*
 iv.   *Answered Yes to Question 7.*

## PUNITIVE DAMAGES

In addition to the claims for damages already mentioned, you should consider whether Gloria Stokes, Bonnie Shaw, and/or Luke Trahan are entitled to punitive damages. Punitive damages are those damages designed to punish a defendant and to deter a defendant and others from engaging in similar conduct in the future.

In this case you may award punitive damages if Plaintiff and Intervenor prove by a preponderance of the evidence that: (1) the individual(s) who engaged in the discriminatory acts or practices was a managerial employee; (2) the individual(s) engaged in the discriminatory acts or practices while acting within the scope of his or her employment; and (3) the individual(s) acted with malice or reckless indifference to Ms. Stokes', Ms. Shaw's, and/or Mr. Trahan's federal protected rights to be free from discrimination.

If Plaintiff and Intervenor have proven these facts, then you may award punitive damages, unless Defendant EmCare proves by a preponderance of the evidence that the conduct was contrary to the employer's good faith efforts to prevent discrimination in the workplace.

In determining whether the individual(s) was/were "managerial employee(s)" of Defendant EmCare, you should consider the type of authority the individual(s) had over Ms. Stokes, Ms. Shaw, and/or Mr. Trahan, and whether Defendant EmCare delegated employment decisions to the individual(s).

Malicious conduct is the intentional doing of a wrongful act with knowledge that the act was wrong. An action was in "reckless indifference" to Ms. Stokes', Ms. Shaw's, and/or Mr. Trahan's federally protected rights if it was taken in the face of a perceived risk that the conduct would violate federal law. Plaintiff and Intervenor are not required to show egregious or outrageous

discrimination to recover punitive damages. However, proof that Defendant EmCare engaged in intentional discrimination is not enough in itself to justify an award of punitive damages.

In determining whether Defendant EmCare made "good faith efforts" to prevent discrimination in the workplace you may consider things like whether it adopted anti-discrimination policies, whether it educated its employees on the federal anti-discrimination laws, how it responded to Ms. Stokes' complaint of discrimination, or any discrimination complaint made by Ms. Shaw and/or Mr. Trahan.

If you decide to award punitive damages, you should try to determine a fair, just, and reasonable amount for each individual victim of discrimination.

*Only answer Question 11 if you answered No to either part of Question 4, or answered Yes to Question 5.*

## QUESTION NO. 11

Do you find that the Defendant acted with malice or with reckless indifference to the federally protected rights of **Gloria Stokes**?

Yes   _____   No _____

If your answer is Yes, what amount of punitive damages should be assessed against Defendant?

$ _____

*Proceed to Question 12 only if you answered Yes to Question 6. Otherwise proceed to Question 13 only if you answered Yes to Question 7. If you answered No to Question 7, proceed to the Certificate page.*

## QUESTION NO. 12

Do you find that the Defendant acted with malice or with reckless indifference to the federally

protected rights of **Bonnie Shaw**?

Yes _____   No _____

If your answer is Yes, what amount of punitive damages should be assessed against Defendant?

$ _____

*Only answer Question 13 if you answered Yes to Question 7. Otherwise proceed to the Certificate page.*

## QUESTION NO. 13

Do you find that the Defendant acted with malice or with reckless indifference to the federally

protected rights of **Luke Trahan**?

Yes _____   No _____

If your answer is Yes, what amount of punitive damages should be assessed against Defendant?

$ _____

*Proceed to the Certificate page.*

## CERTIFICATE

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into Court as our verdict.


Dated October_____, 2014


_____
Presiding Officer of the Jury (signature)