IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,** | |
| **AND** | **Civil Action No.  3:11-cv-02017-P** |
| **GLORIA STOKES, Intervenor** | |
| **vs.** | |
| **EMCARE, INC., Defendant.** | |

## MEMORANDUM OPINION AND ORDER AWARDING ATTORNEY'S FEES

Now before the Court are Intervenor Gloria Stokes' Application for Entry of Judgment to Include an Award of Attorney's Fees and Brief, Defendant EMCARE, Inc.'s Response and Brief, and Stokes' Reply thereto.  Upon consideration of the argument, authorities, supporting materials, and disposition of the underlying action, the Court hereby enters an award of attorney's fees to Stokes in the amount of $183,028.34 as set out below.

### Factual Background

Stokes, as an Intervening Plaintiff, and the EEOC pursued this Title VII employment action for sexual harassment and retaliation on behalf of Stokes[1] against Defendant EMCARE.  The matter was tried before a jury from October 14 through October 21 in 2011.  The jury found that Stokes was sexually harassed by her supervisor and that the Defendant acted with malice or with

---

[1] The EEOC also prosecuted on behalf of two additional individuals.

reckless indifference to Stokes' federally protected rights, awarding her $250,000.00 in punitive damages. The jury also found that Defendant did not terminate Stokes in retaliation for complaining about or opposing sexual harassment or discrimination in the workplace. Consequently, the jury did not award her back pay or compensatory damages. As a prevailing party, Stokes asks the Court to enter a fee award for the work performed by her attorney's firm, Fielding, Parker & Hallmon, LLP. In support thereof, Stokes provides the Court with Laura Hallmon's affidavit and redacted billing records.[2]

EMCARE objects to Stokes' Application, contending that she fails to provide the Court an adequate basis on which to award the requested fees. Specifically, EMCARE argues that Stokes provides inadequate documentation to determine whether the amount requested is reasonable because her fee affidavit relies solely upon the testimony of Hallmon--and not also the attestation of a disinterested attorney—regarding the "prevailing local rates for similar work by an attorney of similar skill, experience and reputation" or "the customary local rate." EMCARE also contends that Stokes' attorney's fees must be reduced to account for the relative success on claims pleaded with a reduction for hours spent prosecuting unsuccessful theories. Moreover, EMCARE asserts Stokes should not be awarded attorney's fees for time spent on excessive and duplicative work in connection with co-prosecution by the EEOC. Finally, EMCARE argues that the fee sought is excessive in proportion to Stokes' recovery and is per se unreasonable because, if granted, Stokes' counsel would ultimately recover more than Stokes.

In reply, Stokes contests the need for corroborating independent testimony regarding the prevailing local rate, but requests, in the alternative, that the Court either grant Stokes leave to

---

[2] Stokes seeks and the Court hereby grants leave to file her Amended Affidavit which incorporates her counsel's billing file data.

amend her affidavit to supply such evidence, or take judicial notice of case law from this division wherein determinations were made as to the prevailing local reasonable attorney fee rate. Regarding EMCARE's argument that the Court should reduce fees based upon the relative success of her action, Stokes asserts that, had she alleged only her successfully-litigated claim (sexual harassment), she would have been required to put on the same proof to address the defense that Defendant . . . asserted to both claims, relying on a "common core of facts" and "related theories" analysis.   Next, Stokes contests that Hallmon's work was excessive and duplicative of that performed by the EEOC.  Finally, Stokes disputes EMCARE's contention that her requested fees are excessive in proportion to her recovery, suggesting that EMCARE's silence regarding the fees it has been charged by its own attorney in the litigation deprives the Court of a meaningful context in which to judge its reasonableness objection.

<u>Analysis and Application of Law</u>

This Court has discretion to award a reasonable attorney's fee to the prevailing party (other than the EEOC) in this action under Title VII of the Civil Rights Act of 1964 pursuant to 42 U.S.C. §2000e-5(k); see <u>Christiansburg Garment Co. v. EEOC</u>, 434 U.S. 412, 417, 54 L. Ed. 2d 648, 654, 98 S. Ct. 694 (1978)(under Title VII prevailing plaintiff ordinarily to be awarded attorney's fees in all but special circumstances).  To determine a reasonable fee, the Court begins by "determining the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 50, 103 S. Ct. 1933 (1983). The Court then multiplies the reasonable hours by the reasonable rate to reach the "lodestar" amount.  <u>Shipes v. Trinity Indus.</u>, 987 F.2d 311, 319 (5th Cir. 1993).   The lodestar is then adjusted upwards or downwards if warranted by the facts as set out in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grds*, <u>Blanchard v. Bergeron</u>, 489 U.S. 87,

103 L. Ed. 2d 67, 109 S. Ct. 939 (1989).[3]   Some of the <u>Johnson</u> factors may be subsumed in determining the lodestar and, if so, should not be considered again in deciding whether the amount warrants adjustment. See <u>Shipes</u>, 987 F.2d at 320.

1.   <u>The Lodestar</u>

Stokes asserts that she is entitled to recovery of $249,542.50, representing fees for work performed from case-inception through the filing of this Application.   Stokes also requests $25,000.00 for "post verdict and judgment motions and hearings."[4]   Hallmon's affidavit sets out the hourly billing rates for work performed by her (at $295.00 per hour for work before January 1, 2010; $300 per hour thereafter) and her paralegal ($165 per hour before January 1, 2010; $170 per hour thereafter)[5].  Hallmon attests that she spent 749.50 hours on the case and that her paralegal spent 180.75 hours.  She also states that her partner David Fielding spent 28.25 hours on the matter. The affidavit makes a $17,526.25 "reduction for duplication of effort" between Hallmon's and Fielding's work, stating Hallmon "deducted fees related to any duplication of effort (including but not limited to, all time spent by. . . David Fielding)."   In support of the foregoing, Hallmon states that she has been practicing law in this district for 16 years, focusing exclusively on prosecution and defense of employment law matters, including cases involving discrimination and retaliation. She states that she has attained an "AV Preeminent" rating for Labor and Employment Litigation by the bar and judiciary.   She testifies that she is familiar with the reasonable and necessary

---

[3] Those factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." <u>Id.</u>

[4] Stokes withdraws her request for post-judgment/appellate fees inasmuch as such fees are not yet ripe.

[5] Hallmon's affidavit states that at the time she was assigned to the matter, her paralegal had 22 years of experience and extensive experience managing large document-intensive cases.

services performed and fees charged by attorneys in the local area for litigation like this case. Hallmon asserts in her affidavit that from case-inception, she recognized the matter would be hard-fought and that EMCARE would, and did, contest "virtually every legal issue." Hallmon attests that the "litigation spanned 5.25 years and included numerous depositions as well as three trial settings," necessitating concentrated pretrial work on multiple dates. Her affidavit asserts that Hallmon would, and the docket confirms she did, file a post-verdict Application for Injunctive Relief, which the Court subsequently granted in part. Finally, Hallmon attests that the fees requested were and are reasonable and necessary, and commensurate with the size and complexity of the case and issues involved in this matter, as well as with awards in similar cases, and are merited by the results obtained.

EMCARE contends that, because Hallmon's affidavit lacks the additional testimony of a disinterested attorney regarding the prevailing local rate for similar work performed by an attorney of similar skill, experience and reputation, Stokes has failed to meet her burden of establishing entitlement to the fee award, citing Blum v. Stenson, 465 U.S. 886, 895-96, n. 11 (1984) and Wheeler v. MHMR Auth., 752 F.2d 1063, 1073 (5th Cir. 1985). While such testimony would have been helpful to aid the Court's determination of the lodestar, neither case limits the Court's assessment to this specific form of evidence. Given the age and history of the case, and the judicial economy afforded by not incurring additional fees or delay concomitant with amendment, the Court may, and hereby does, take judicial notice of evidence relied upon in pertinent cases within this judicial district to determine whether the attorney fee rates proffered by Stokes are reasonable. See Radiant v. Am. Scheduling, Inc., No. 3:04-CV-2597-P, 2006 U.S. Dist. LEXIS 63984 (N. D. Tex. Sept.7, 2006)($400 per hour reasonable for attorney with 6 years' experience in Dallas County, Texas). See also, Arnold v. Babbitt, No. 3:96-CV-3077-P, 2000 U.S. Dis. LEXIS 4409

(N. D. Tex., April 6, 2000)(finding $350 per hour for highest paid attorney reasonable more than 11 years before the Stokes lawsuit). Based on all the evidence before it, the Court finds that Stokes has met her burden to establish that the rates charged by Ms. Hallmon for this litigation are reasonable.[6]

As to the number of hours expended, EMCARE asserts Stokes' degree of success in the underlying action is the "most critical factor" the Court should consider in determining a reasonable fee award, relying on Farrar v. Hobby, 506 U.S. 103, 114, 121 L. Ed. 2d 494, 505, 113 S. Ct. 566 (1992), which cites Hensley, 461 U.S. at 434. EMCARE argues that Stokes' attorney fees must be reduced to account for time spent prosecuting her unsuccessful theories, i.e. those involving her action for unlawful retaliation. Stokes argues in response that her attorney's fees should not be reduced by the time spent on prosecuting her retaliation action because she was required to "put on the same proof to address the defense that [EMCARE] asserted in response to both claims." Stokes does not identify such proof and/or the defense, and the Court is not persuaded that the evidence relied upon to pursue each action is, in fact, entirely identical. The Court recognizes that there is a good deal of intertwining of the legal theories, and that some evidence will overlap. Nonetheless, it would not be fair to award recovery on all work performed to the extent that it would reward Stokes for fees attributed to her unsuccessful claim. Therefore, the fee award will be reduced to reflect Stokes' relative success on the merits. Unfortunately, because the billing records upon which Stokes relies do not break the work down by claim, the

---

[6] EMCARE does not specifically contest the reasonableness of the rate or hours ascribed to Stokes' paralegal. Using the same analysis relied upon regarding Hallmon's fee, the Court includes in its determination the requested amount for Hallmon's paralegal and reduces it accordingly by virtue of the overall fee reduction. See KD's Crossing, Ltd. v. Martin, No. 3:13-CV-4922-L, 2015 WL 1505694, N.D. Tex., March 30, 2015 (local wage for paralegals is from $75 to more than $200); Parker v. US Bank Nat'l Assoc., No. 3:12-CV-4297-L, 2014 WL 2883919, N.D. Tex., June 25, 2014 (though 'on the high side' for the Northern District, paralegal rate of $190 per hour reasonable); Park Cities Bank v. Lee, No. 3:10-CV-1584-K, 2012 WL 3638692, N.D. Tex., Aug. 24, 2012 (paralegal billing rate that did not exceed $175 per hour certainly reasonable compared to billing rates in the Dallas area).

Court must rely on its first-hand knowledge of the litigation, parties and counsel throughout the proceedings, to reduce the award to reflect a reasonable fee for the work performed on the successful claims. See Primrose Operating Co. v. Nat'l Am. Ins. Co., 382 F.3d 546, 562 (5th Cir. 2004)(trial courts considered experts as to reasonableness of attorney's fees). See also Heasley v. Comm'r of Internal Revenue, 967 F.2d 116, 123 (5th Cir. 1992). Based on its familiarity with the case and proceedings, the Court finds that a fair breakdown of the effort would allot more time, work and proof for the hostile work environment component than for the retaliation component. The overall fee award will, therefore, be reduced accordingly.

### 2. Johnson Factor Reductions

#### A). Excessive and Duplicative Work

EMCARE urges the Court to deny attorney's fees to Stokes on the basis that the hours Hallmon expended on the litigation were excessive and duplicative of the work performed by the EEOC. EMCARE goes so far as to characterize the relative efforts as: "the EEOC drove the litigation and Intervenor was along for the ride." EMCARE contends that the Court should apply the results obtained in EEOC V. Clear Lake Dodge, 60 F.3d 1146, 1153 (5th Cir. 1995) and EEOC v. Strasburger, Price, Kelton, Martin & Unis, 626 F.2d 1272, 1274 (5th Cir. 1980) and exclude hours spent on "excessive, duplicative or inadequately documented" tasks pursuant to Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993).

Stokes responds that Hallmon and the EEOC worked diligently together, "exercising a collaborative approach" so as not to "waste judicial resources" or "incur surplus costs and fees with unnecessarily redundant or duplicative efforts." Moreover, Stokes asserts the Court can easily discern that that the EEOC focused primarily on Shaw's and Trahan's claims, while Hallmon's representation was exclusively of Stokes.

The Court is keenly situated to assess whether Hallmon's representation was excessive and duplicative of that provided by the EEOC counsel. Throughout the proceedings, it is clear to the Court that these lawyers worked collaboratively and that, for the most part, they divided their tasks so as not to duplicate effort. It is true that Hallmon focused exclusively on representing Stokes, and the Court observed that Hallmon represented her client well. Similarly, it is true that the additional aggrieved parties were exclusively represented by the EEOC. But it is equally true that Stokes received a notable benefit from co-prosecution by the EEOC lawyers. While EMCARE's assertion that the EEOC drove a train upon which Hallmon merely rode mischaracterizes the lawyer's respective contributions, the Court does find that the EEOC directed the litigation and provided an observable representational benefit to Stokes. Therefore, to reach a fair and reasonable attorney's fee, the Court will reduce the lodestar to reflect the benefit provided by the EEOC's co-prosecution of Stokes to her successful sexual harassment and punitive damages claims.

### B). Fees Excessive in Proportion to Recovery

Finally, EMCARE argues that the $274,542.50 which Stokes asks the Court to award is clearly disproportionate to the $250,000.00 result obtained, and is per se unreasonable because it would award Hallmon more money than that recovered by her client. Along with this argument, EMCARE challenges assignation of success on the punitive damage award to Stokes' counsel rather than to the EEOC because, EMCARE asserts, Stokes' pleadings did not seek punitive damages and thus did not properly put the damages before the Court. Stokes' Complaint alleges that "Defendant's actions were committed with malice and reckless indifference to Stokes' rights" and while she did not identify punitive damages in the list of specific damages sought, she did request "such other and further relief to which she may be justly entitled, whether at law or in equity." In accordance with Federal Rule of Civil Procedure 8 (e)'s directive that pleadings must

be construed so as to do justice, the Court does not find persuasive EMCARE's arguments on this point. Moreover, inasmuch as the Court is reducing the lodestar on grounds already addressed, the total amount of attorney's fees awarded will not be disproportionate to the recovery obtained. Therefore, the Court will not make an additional reduction on this argument.

Reduced Attorney's Fee Award

Based on the argument, authorities, and proceedings, and the Court's observation of the counsel, parties and litigation, the Court finds that Stokes, as a prevailing party, is entitled to recovery of reasonable attorney's fees for successful prosecution of her sexual harassment and punitive damages claims. The Court determines that arriving at a reasonable fee for this matter requires a reduction of the lodestar to reflect Stokes' relative success on the merits and the representational benefit attributable to the EEOC. Moreover, the Court must rely upon time records that do not break the hours down by claim and its own observations to make its determination. Based on the foregoing, the Court finds that a reduction of the lodestar by 33% results in a reasonable attorney's fee award for Stokes. See Hensley, 461 U.S. at 436, 76 L. Ed. 2d at 52 (court has discretion to make equitable judgment and may simply reduce an award). One-third of $274,542.50 is $183,028.34. Therefore, the Court hereby awards Stokes $183,028.34 in attorney's fees.

Lastly, Stokes requests the Court enter judgment to include the attorney's fees award along with an assessment of the court costs of Plaintiff EEOC and Intervenor-Plaintiff Stokes against EMCARE. The parties are hereby directed to submit any bills of costs within 14 days of this Order. EMCARE will have 14 days to file any objections. Any replies thereto must be filed within 7 days of such objections.

**SO ORDERED.**

Signed this ⟨5th⟩ day of ⟨~~July~~⟩ August, 2015.

⟨signature: Jorge A. Solis⟩

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE